1  GARY OWEN CARIS (SBN 088918)
     gcaris@mckennalong.com
2  LESLEY ANNE HAWES (SBN 117101)
     lhawes@mckennalong.com
3  MCKENNA LONG & ALDRIDGE LLP
   444 South Flower Street, 8th Floor
4  Los Angeles, CA  90071-2901
   Telephone:    (213) 688-1000
5  Facsimile:    (213) 243-6330

6  THOMAS F. KUMMER
   KUMMER KAEMPFER BONNER & RENSHAW
7  3800 Howard Hughes Parkway, 7th Floor
   Las Vegas, Nevada 89109-0907
8  Telephone:    (702) 792-7000
   Facsimile:    (702) 796-7181
9
   Attorneys for Receiver
10 **ROBB EVANS**

11              **UNITED STATES DISTRICT COURT**

12                  **DISTRICT OF NEVADA**

13

| | |
|---|---|
| 14  FEDERAL TRADE COMMISSION, | CASE NO.  CV-S-99-0969-KJD (PAL) |
| 15              Plaintiff, | **NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT BY AND AMONG THE U.S. DEPARTMENT OF JUSTICE, ON BEHALF OF THE INTERNAL REVENUE SERVICE, THE FEDERAL TRADE COMMISSION, BILL GOULDD, AND THE RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF KENTON JOHNSON IN SUPPORT THEREOF** |
| 16          v. | |
| 17  EQUINOX INTERNATIONAL CORP., et al., | |
| 18              Defendants. | |
| 19 | |
| 20 | |
| 21 | |
| 22 | **DATE:    December 15, 2006** |
| 23 | **TIME:    9:00 A.M.** **PLACE:  Courtroom 6D** |
| 24 | |

25

26        TO:  ALL PARTIES TO THIS ACTION, THEIR ATTORNEYS OF

27  RECORD, AND ALL OTHER PARTIES IN INTEREST:

28

LA:17241447.1

1    PLEASE TAKE NOTICE that on December 15, 2006, at 9:00 a.m., or as

2    soon thereafter as counsel may be heard in Courtroom 6D of the above-entitled

3    Court, located at 333 South Las Vegas Boulevard, Las Vegas, NV 89101, Robb

4    Evans, as Receiver of Equinox International Corporation, Advanced Marketing

5    Seminars, Inc. and BG Enterprises, Inc., and Related Entities as defined in the

6    Order Preliminarily Approving Stipulated Final Judgment and Class Action

7    Settlement and Setting Fairness Hearing entered April 20, 2000 ("Permanent

8    Receivership Order") and over various assets as set forth in the Permanent

9    Receivership Order (hereinafter Robb Evans is referred to as the "Receiver") will

10   and does hereby move the Court for an order approving the Settlement Agreement

11   by and among the U.S. Department of Justice, on behalf of the Internal Revenue

12   Service, the Federal Trade Commission, Bill Gouldd, and the Receiver.  As

13   specified in the Settlement Agreement, Exhibit 1 hereto, the Internal Revenue

14   Service has proposed the assessment of certain federal tax liabilities against certain

15   of the receivership entities and Bill Gouldd.  These proposed tax liabilities will be

16   resolved pursuant to the terms of the Settlement Agreement in exchange for a

17   payment by the Receiver from the receivership estate of $1 million to the Internal

18   Revenue Service.

19   By this motion, the Receiver seeks the Court's approval of the Settlement

20   Agreement and an order authorizing the Receiver to perform all acts necessary or

21   convenient for the Receiver to obtain the benefits and perform all obligations under

22   the Settlement Agreement.

23   This motion is made and based upon this Notice of Motion and Motion, the

24   Memorandum of Points and Authorities and accompanying Declaration of Kenton

25   Johnson, and on such further oral and documentary evidence as may be presented at

26   or before the time of the hearing on this motion.  The motion is further made upon

27   the grounds that the Settlement Agreement is reasonable, fair and equitable, and in

28   the best interests of the receivership estate.

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

1    PLEASE TAKE FURTHER NOTICE pursuant to Local Rule 7-2(b) that any

2 party objecting to the Motion must, within 15 days of service of this Notice of

3 Motion and Motion, serve and file a written response to be considered by the Court.

4

5 Dated:  November **27**, 2006              MCKENNA LONG & ALDRIDGE LLP
                                           GARY OWEN CARIS
6                                          LESLEY ANNE HAWES

7

8                                     By: _____

9                                          Gary Owen Caris

                                           Attorneys for Receiver
10                                         ROBB EVANS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -                       MOTION FOR APPROVAL OF SETTLEMENT
                                                   AGREEMENT
LA:17241447.1

MEMORANDUM OF POINTS AND AUTHORITIES

I.    **INTRODUCTION**

By this Motion, the Receiver seeks an order approving the Settlement Agreement by and among the U.S. Department of Justice ("DOJ"), on behalf of the Internal Revenue Service ("IRS"), the Federal Trade Commission ("FTC"), Bill Gouldd ("Gouldd") and the Receiver.

As summarized below and more particularly set forth in the Settlement Agreement, Exhibit 1 hereto, the DOJ, on behalf of the IRS, the FTC, Gouldd and the Receiver have agreed to resolve the IRS's proposed assessment of certain federal tax liabilities against certain of the receivership entities in the face amount of $12,088,682.58 for $1 million.  The Receiver believes that this Settlement Agreement is fair and equitable and represents a beneficial result for the receivership estate.  This Settlement Agreement enables the Receiver to fully and finally resolve the IRS claims in the estate for only 8.3% of the face amount of the claims, resolves any potential obligation of the Receiver to indemnify Gouldd in connection with the IRS claims, and enables the receivership estate to retain for distribution to claimants most of the approximately $20 million on hand in the receivership estate.

II.   **STATEMENT OF FACTS**

A.    **Background Summary**

The FTC and the States of Hawaii, Maryland, Nevada, North Carolina, Pennsylvania and South Carolina commenced this action on August 3, 1999.  On September 14, 1999, the Court entered an order partially granting plaintiffs' motion for a preliminary injunction.  On November 19, 1999, plaintiffs filed an amended complaint seeking a permanent injunction against Equinox International Corporation ("Equinox"), Gouldd, Advanced Marketing Seminars, Inc. and BG Management, Inc. and monetary redress for injuries suffered by current and former distributors of Equinox.

MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

McKenna Long & Aldridge LLP
Attorneys At Law
Los Angeles

LA:17241447.1

1    Previously, in January 1997, five individuals filed a lawsuit seeking damages

2    and equitable relief for all distributors who had joined Equinox prior to January 7,

3    1997.  The lawsuit was certified as a class action in October 1997, and the

4    certification was upheld on appeal.  In November 1999, the Court granted the class

5    representatives permission to intervene in the within action.  In March 2000, notice

6    of the class action was mailed to persons who became Equinox distributors before

7    January 7, 1997.

8    On April 20, 2000, the Court entered its Order Preliminarily Approving

9    Stipulated Final Judgment and Class Action Settlement and Setting Fairness

10   Hearing ("Permanent Receivership Order").  Among other things, the Permanent

11   Receivership Order appointed Robb Evans as Receiver of Equinox, Advanced

12   Marketing Seminars, Inc., BG Management Services, Inc. and Related Entities as

13   defined in the Permanent Receivership Order and as receiver of certain assets of

14   Gouldd (collectively, the "Receivership Estate").

15   The IRS proposed the assessment of certain federal tax liabilities against

16   certain of the Receivership Entities and Gouldd.  These proposed liabilities are set

17   forth in four proofs of claim submitted by the IRS to the Court on or about February

18   5, 2001 (the "Claims").  In the aggregate, the Claims describe nine different

19   asserted tax liabilities against various receivership entities and Gouldd for the tax

20   periods December 31, 1994 through December 31, 1997 in the aggregate face

21   amount of $12,088,682.58.

22   At or about the time that these Claims were submitted to the Court, the

23   Receiver, the FTC and the IRS began discussing a potential resolution of the

24   Claims.  These settlement discussions have spanned over 5 1/2 years.  Early in the

25   discussions, it appeared appropriate to involve the DOJ in these negotiations given

26   the fact that two United States agencies were essentially competing for the same

27   pool of funds.  The FTC's attorney successfully arranged for the DOJ to intervene

28   in the dispute.  The DOJ became actively involved in negotiating and finalizing the

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:17241447.1

- 5 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

1  settlement.  The Settlement Agreement has now been executed by all of the parties

2  thereto.

3  **B.    The Terms of the Settlement Agreement**

4  After this extraordinarily lengthy negotiation, the DOJ, on behalf of the IRS,

5  the FTC, Gouldd and the Receiver entered into the Settlement Agreement, a true

6  and correct copy of which is attached hereto as Exhibit 1.  Under the Settlement

7  Agreement, within thirty days of receipt of notice of the Court's approval of the

8  Settlement Agreement, the Receiver will pay $1 million from the Receivership

9  Estate to the IRS in exchange for which the IRS:  (a) will abate all taxes set forth in

10  the Claims; (b) will consider all such liabilities to be fully compromised, released

11  and discharged, including any associated penalties and interest; (c) will not consider

12  any portion of such liabilities to be unpaid; (d) will not make any further

13  adjustments or any claims with respect to any item of income, deduction, credit,

14  carry-forward or carryback, gain, basis, refund, loss or any other tax attributes to

15  the extent that such adjustments would affect the tax liability of the taxpayers for

16  the tax periods December 31, 1994 through December 31, 1997; and (e) will release

17  any liens securing such liabilities.

18  The Settlement Agreement further provides that the remaining assets of the

19  Receivership Estate will only be used to pay those expenses incurred by the

20  Receiver in administering the Receivership Estate, eligible creditors as determined

21  by the Court, and investors who suffered financial loss in connection with Equinox,

22  as determined by the Court.

23  This settlement represents a payment of only 8.3% of the face amount of the

24  IRS Claims in full settlement.[1]

25

26

27

28

---

[1]  Because the IRS contends that interest accrues on these Claims, the actual settlement amount is for an even smaller percentage of the total Claims.

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

- 6 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

LA:17241447.1

III.   **THE TERMS OF THE AGREEMENT ARE REASONABLE, FAIR, EQUITABLE AND IN THE BEST INTERESTS OF THE RECEIVERSHIP ESTATE**

The "general equity power" of the District Court in issuing orders addressing the administration of a receivership estate is discussed at length by the Ninth Circuit in *SEC v. Hardy*, 803 F. 2nd 1034 (9th Cir. 1986).  Recognizing the limited body of reported decisions in federal receiverships, the Court nevertheless articulated two overriding principles gleaned from the case law:

> First, a court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad . . . the basis for broad deference to the District Court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.
>
> . . .
>
> Secondly, we have acknowledged that a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the District Court for the benefit of creditors.  [Citations omitted.]  Accordingly, we generally uphold reasonable procedures instituted by the District Court that serve this purpose.  [Citations omitted.] *SEC v. Hardy*, 8, 803 F. 2nd 1037-1038.  <u>Accord</u> *SEC v. Black*, 163 F. 3rd 188-199 (3rd Cir. 1998); *SEC v. Elliot*, 953 F. 2nd 1560 (11th Cir. 1992).

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

LA:17241447.1

The leading treatise on receivership law states:

> The only justification for the compromise of claims is that it is done for the best interests of the receivership and the estate under the control and possession of the court.

3 *Clark on Receivers* § 655 (3d ed. 1959)

> The court appointing a receiver must use its discretion in determining whether it is for the best interests of the estate that the receiver be authorized to compromise a claim, and when the appointing court has not abused its discretion in giving instructions to the receiver, its orders will not be disturbed or reviewed in the appellate court.

3 *Clark on Receivers* § 770 (3d ed. 1959)

Pursuant to Local Rule 66-10, a receiver is directed to a receivership estate "as nearly as may be in accordance with the practice in the administration of estates in Chapter 11 bankruptcy cases." Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, the court in a bankruptcy case may approve a proposed compromise of controversies after notice and an opportunity for hearing. In deciding whether to approve a proposed settlement, the bankruptcy court must consider the following: (1) the probability of success in litigation; (2) any difficulties to be encountered in the matter of collection; (3) the complexity of litigation, including expense, inconvenience and delay necessarily attendant thereto; and (4) the paramount interest of creditors and a proper deference to their reasonable views. *In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 (1986) and *In re Woodson*, 839 F.2d 610 (9th Cir. 1988).

Likewise, a bankruptcy court is not required to decide the questions of law and fact raised in the controversies sought to be settled, nor is it required to determine whether the settlement presented is the best one that could possibly have been achieved. Rather, it is sufficient that the settlement not fall "below the lowest

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

- 8 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

LA:17241447.1

point in the zone of reasonableness." *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972).

Under these standards and authorities, the settlement is reasonable and in the best interests of the Receivership Estate, and should be approved. The IRS has asserted that its tax claim has priority over the FTC and any other claims in the Receivership Estate pursuant to, among other statutes, 31 U.S.C. § 3713. While the Receiver has not conceded the validity of the IRS's priority position, the Receiver concedes that there is a substantial question and risk that the IRS would prevail in that position. Such litigation would be time-consuming, costly and expensive and if the IRS prevailed, the vast majority of the funds held by the Receivership Estate, approximately $20.4 million, would be paid to the IRS pursuant to these Claims.

Equally important, absent a settlement, even assuming for argument's sake that a determination were made subordinating the IRS Claims, or treating them pro rata with other claims in the Receivership Estate, the Receiver would have a substantial litigation dispute with Gouldd over the indemnity provisions found in the Permanent Receivership Order, as well as the provisions of the letter agreement filed April 20, 2000 by and among the FTC, the Intervenors, Gouldd and the Receiver. Specifically, Gouldd has contended that under section IX.O of the Permanent Receivership Order, the Receiver indemnifies and holds Gouldd harmless from the federal tax obligations represented by the Claims.[2] While the Receiver has not conceded that the scope of the indemnity would cover these Claims, the Receiver recognizes that there is a great deal of uncertainty and risk regarding this issue. If Gouldd is correct and the scope of the indemnity covers

---

[2] Section IX.O provides, in pertinent part: "The Receiver assumes all obligations . . . of Gouldd relating to any and all assets, Corporate Defendants, and Related Entities that have been transferred to the Receiver, and agrees to indemnify and hold harmless Gouldd from any claims, legal fees or expenses arising from such obligations. This indemnification is limited to assets of the Receivership Estate. For the purpose of this subsection, the term 'obligations' includes, but is not limited to, federal . . . tax obligations that arise by virtue of possession, ownership, use or sale of any asset by the Receiver. . . ."

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

LA:17241447.1

these Claims, then, absent this Settlement Agreement, the IRS could pursue Gouldd for any unpaid portions of the Claims and Gouldd could seek indemnification from the assets in the Receivership Estate.  In such event, the Receiver would still be required to utilize most of the funds on hand in the Receivership Estate to satisfy the indemnity obligation to Gouldd.

Therefore, if the IRS were able to successfully assert a priority in the estate on its Claims or if Gouldd were able to successfully assert a right to indemnity against the Receiver, the entirety of the Claims in the aggregate principal amount of $12,088,682.58, plus interest (and potentially penalties and other charges) would be payable.  Instead, all of these Claims are resolved for a payment of only 8.3% of the face amount of the Claims.

Given the difficult issues raised by the IRS and Gouldd, the complexity of the issues, the uncertainty and risk in litigating these issues, and the expense which would be incurred in such litigation, a resolution of the IRS claims in their entirety for only $1 million represents a great benefit to the Receivership Estate.  Without the need to engage in costly and time-consuming litigation with the IRS or with Gouldd, this settlement enables the Receiver to resolve all of the IRS tax liabilities. This settlement enables the Receivership Estate to retain the vast majority of the $20.4 million on hand for payment to allowed claimants, almost all of which are aggrieved distributors and paves the way for the Receiver to make a prompt distribution to those claimants.  Enabling the Receiver to finally wind-up the estate and pay the creditors is another important benefit in approving the Settlement Agreement after all of these years of delay.

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

- 10 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

LA:17241447.1

1

**IV.   CONCLUSION**

2    For the reasons set forth herein, the Receiver respectfully requests that this

3 Court grant this Motion and approve the Settlement Agreement in its entirety.

4

5 Dated:  November **27**, 2006          MCKENNA LONG & ALDRIDGE LLP
                                        GARY OWEN CARIS
6                                       LESLEY ANNE HAWES

7

8                                       By: _____

9                                           Gary Owen Caris

10                                      Attorneys for Receiver
                                        ROBB EVANS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles
LA:17241447.1

- 11 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

<u>DECLARATION OF KENTON JOHNSON</u>

I, Kenton Johnson, declare:

1.     I am a deputy to Robb Evans, the permanent Receiver in this matter.  I am also the Executive Vice President of Robb Evans & Associates LLC.  I have personal knowledge of the matters set forth in this declaration or I have gained knowledge of these matters based upon my supervision of other members and staff of Robb Evans & Associates LLC who assist me in the day-to-day management of this receivership estate.  If called upon to testify as to these matters, I could and would competently testify thereto.

2.     The FTC and the States of Hawaii, Maryland, Nevada, North Carolina, Pennsylvania and South Carolina commenced this action on August 3, 1999.  On September 14, 1999, the Court entered an order partially granting plaintiffs' motion for a preliminary injunction.  On November 19, 1999, plaintiffs filed an amended complaint seeking a permanent injunction against Equinox International Corporation ("Equinox"), Gouldd, Advanced Marketing Seminars, Inc. and BG Management, Inc. and monetary redress for injuries suffered by current and former distributors of Equinox.

3.     Previously, in January 1997, five individuals filed a lawsuit seeking damages and equitable relief for all distributors who had joined Equinox prior to January 7, 1997.  The lawsuit was certified as a class action in October 1997, and the certification was upheld on appeal.  In November 1999, the Court granted the class representatives permission to intervene in the within action.  In March 2000, notice of the class action was mailed to persons who became Equinox distributors before January 7, 1997.

4.     On April 20, 2000, the Court entered its Order Preliminarily Approving Stipulated Final Judgment and Class Action Settlement and Setting Fairness Hearing ("Permanent Receivership Order").  Among other things, the

MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

McKenna Long & Aldridge LLP
Attorneys At Law
Los Angeles

LA:17241447.1

1  Permanent Receivership Order appointed Robb Evans as Receiver of Equinox,

2  Advanced Marketing Seminars, Inc., BG Management Services, Inc. and Related

3  Entities as defined in the Permanent Receivership Order and as receiver of certain

4  assets of Gouldd (collectively, the "Receivership Estate").

5       5.      The IRS proposed the assessment of certain federal tax liabilities

6  against certain of the Receivership Entities and Gouldd.  These proposed liabilities

7  are set forth in four proofs of claim submitted by the IRS to the Court on or about

8  February 5, 2001 (the "Claims").  In the aggregate, the Claims describe nine

9  different asserted tax liabilities against various receivership entities and Gouldd for

10  the tax periods December 31, 1994 through December 31, 1997 in the aggregate

11  face amount of $12,088,682.58.  These Claims are attached to the Settlement

12  Agreement.

13       6.      At or about the time that these Claims were submitted to the Court, the

14  Receiver, the FTC and the IRS began discussing a potential resolution of the

15  Claims.  These settlement discussions have spanned over 5 1/2 years.  Early in the

16  discussions, it appeared appropriate to involve the DOJ in these negotiations given

17  the fact that two United States agencies were essentially competing for the same

18  pool of funds.  The FTC's attorney successfully arranged for the DOJ to intervene

19  in the dispute.  The DOJ became actively involved in negotiating and finalizing the

20  settlement.  The Settlement Agreement has now been executed by all of the parties

21  thereto.

22       7.      After this extraordinarily lengthy negotiation, the DOJ, on behalf of

23  the IRS, the FTC, Gouldd and the Receiver entered into the Settlement Agreement,

24  a true and correct copy of which is attached hereto as Exhibit 1.  Under the

25  Settlement Agreement, within thirty days of receipt of notice of the Court's

26  approval of the Settlement Agreement, the Receiver will pay $1 million from the

27  Receivership Estate to the IRS in exchange for which the IRS:  (a) will abate all

28  taxes set forth in the Claims; (b) will consider all such liabilities to be fully

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

LA:17241447.1

1   compromised, released and discharged, including any associated penalties and

2   interest; (c) will not consider any portion of such liabilities to be unpaid; (d) will

3   not make any further adjustments or any claims with respect to any item of income,

4   deduction, credit, carry-forward or carryback, gain, basis, refund, loss or any other

5   tax attributes to the extent that such adjustments would affect the tax liability of the

6   taxpayers for the tax periods December 31, 1994 through December 31, 1997; and

7   (e) will release any liens securing such liabilities.  The Settlement Agreement

8   further provides that the remaining assets of the Receivership Estate will only be

9   used to pay those expenses incurred by the Receiver in administering the

10  Receivership Estate, eligible creditors as determined by the Court, and investors

11  who suffered financial loss in connection with Equinox, as determined by the

12  Court.  This settlement represents a payment of only 8.3% of the face amount of the

13  IRS Claims in full settlement.  Because I am advised that the IRS contends that

14  interest accrues on these Claims, the actual settlement amount is for an even smaller

15  percentage of the total Claims.

16          8.      The Receiver believes that under these standards and authorities, the

17  settlement is reasonable and in the best interests of the Receivership Estate, and

18  should be approved.  I am advised that the IRS has asserted that its tax claim has

19  priority over the FTC and any other claims in the Receivership Estate pursuant to,

20  among other statutes, 31 U.S.C. § 3713.  While the Receiver has not conceded the

21  validity of the IRS's priority position, the Receiver concedes that there is a

22  substantial question and risk that the IRS would prevail in that position.  Such

23  litigation would be time-consuming, costly and expensive and if the IRS prevailed,

24  the vast majority of the funds held by the Receivership Estate, approximately $20.4

25  million, would be paid to the IRS pursuant to these Claims.

26          9.      Equally important, absent a settlement, even assuming for argument's

27  sake that a determination were made subordinating the IRS Claims, or treating them

28  pro rata with other claims in the Receivership Estate, the Receiver would have a

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

- 14 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

LA:17241447.1

substantial litigation dispute with Gouldd over the indemnity provisions found in the Permanent Receivership Order, as well as the provisions of the letter agreement filed April 20, 2000 by and among the FTC, the Intervenors, Gouldd and the Receiver. Specifically, Gouldd has contended that under section IX.O of the Permanent Receivership Order, the Receiver indemnifies and holds Gouldd harmless from the federal tax obligations represented by the Claims. While the Receiver has not conceded that the scope of the indemnity would cover these Claims, the Receiver recognizes that there is a great deal of uncertainty and risk regarding this issue. If Gouldd is correct and the scope of the indemnity covers these Claims, then, absent this Settlement Agreement, the IRS could pursue Gouldd for any unpaid portions of the Claims and Gouldd could seek indemnification from the assets in the Receivership Estate. In such event, the Receiver would still be required to utilize most of the funds on hand in the Receivership Estate to satisfy the indemnity obligation to Gouldd.

10. Therefore, if the IRS were able to successfully assert a priority in the estate on its Claims or if Gouldd were able to successfully assert a right to indemnity against the Receiver, the entirety of the Claims in the aggregate principal amount of $12,088,682.58, plus interest (and potentially penalties and other charges) would be payable. Instead, all of these Claims are resolved for a payment of only 8.3% of the face amount of the Claims. Given the difficult issues raised by the IRS and Gouldd, the complexity of the issues, the uncertainty and risk in litigating these issues, and the expense which would be incurred in such litigation, the Receiver believes that a resolution of the IRS claims in their entirety for only $1 million represents a great benefit to the Receivership Estate. Without the need to engage in costly and time-consuming litigation with the IRS or with Gouldd, this settlement enables the Receiver to resolve all of the IRS tax liabilities. This settlement enables the Receivership Estate to retain the vast majority of the $20.4 million on hand for payment to allowed claimants, almost all of which are

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

LA:17241447.1

1  aggrieved distributors and paves the way for the Receiver to make a prompt

2  distribution to those claimants.  Enabling the Receiver to finally wind-up the estate

3  and pay the creditors is another important benefit in approving the Settlement

4  Agreement after all of these years of delay.

5      I declare under penalty of perjury that the foregoing is true and correct and

6  that this Declaration was executed on November 27, 2006 at Sun Valley, California.

7

8  Kenton Johnson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

LA:17241447.1

# PROOF OF SERVICE BY MAIL

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **444 South Flower Street, Los Angeles, California 90071**.

On November 27, 2006, I served the **NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT BY AND AMONG THE U.S. DEPARTMENT OF JUSTICE, ON BEHALF OF THE INTERNAL REVENUE SERVICE, THE FEDERAL TRADE COMMISSION, BILL GOULDD, AND THE RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF KENTON JOHNSON IN SUPPORT THEREOF** on the interested parties in this action by placing the **true copy**/original thereof, enclosed in a sealed envelope, postage prepaid, addressed as follows:

*SEE ATTACHED SERVICE LIST.*

I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service.

The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of such business.

☐ **(STATE)**      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)**      I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 27, 2006 at Los Angeles, California.

_____
Signature

_____
*Pamela A. Coates*
Print Name

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:17241447.1

MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

**SERVICE LIST**

| | |
|---|---|
| G. Mark Albright | Barry C. Barnett |
| Will Stoddard | Susman Godfrey L.L.P. |
| Albright, Stoddard, Warnick & Albright | 901 Main Street, Suite 4100 |
| Quail Park, Suite D-4 | Dallas, TX 75202-3775 |
| 801 South Rancho Drive | |
| Las Vegas, NV 89106 | |
| | |
| William R. Moss | Howard Longman |
| Robert L. Duncan | Stull, Stull & Brody |
| Crenshaw, Dupree & Milam, L.L.P. | Six East 45th Street |
| P.O. Box 1499 | New York, NY 10017 |
| Lubbock, TX 79408-1499 | |
| | |
| Jeffrey S. Abraham | Gary S. Griafman |
| Abraham & Associates | Kantrowitz, Goldhamer & Graifman, P.C. |
| One Penn Plaza, Suite 1910 | 747 Chestnut Ridge Road |
| New York, NY 10019 | Chestnut Ridge, NY 10977 |
| | |
| Robert Cary | David C. Fix |
| Philip Andrew Schler | Gary L. Ivens |
| Daniel F. Katz | Federal Trade Commission |
| Edward J. Bennett | 600 Pennsylvania Ave., N.W., Rm. H-238 |
| Williams & Connolly | Washington, D.C. 20580 |
| 725 Twelfth Street | Tel:   (202) 326-3298 |
| Washington, D.C. 20005 | Fax:   (202) 326-3395 |
| | |
| Daniel G. Bogden | Kathleen Delaney |
| United States Attorney | Deputy Attorney General |
| Blaine T. Welsh | Nevada Attorney General's Office |
| Assistant United States Attorney | 555 E. Washington Avenue, Suite 3900 |
| District of Nevada | Las Vegas, NV 89101 |
| 333 S. Las Vegas Blvd. So., Suite 5000 | |
| Las Vegas, NV 89101 | |
| | |
| Kristine Lanning | J. P. McGowan |
| Assistant Attorney General | Senior Deputy Attorney General |
| Office of the Attorney General | Bureau of Consumer Protection |
| 114 W. Edenton Street | 214 Samter Building |
| P.O. Box 629 | 101 Penn Avenue |
| Raleigh, NC 27602 | Scranton, PA 18503 |
| | |
| Dale E. Cantone | Dean A. Soma, Esq. |
| Assistant Attorney General | Department of Commerce and Consumer |
| Office of the Attorney General |    Affairs |
| 200 Saint Paul Place | Securities Enforcement Unit |
| Baltimore, MD 21202-2021 | 335 Merchant Street, Suite 205 |
| | Honolulu, HI 96813 |

1

2    Jennifer M. Granholm                        Paul G. Summers
     Attorney General of Michigan               Attorney General & Reporter of Tennessee
3    Katharyn Barron                            Jennifer Rawls
     Assistant Attorney General                 Assistant Attorney General
4    P.O. Box 30213                             Office of the Attorney General
     G. Mennen Williams Building                425 Fifth Avenue, 2nd Floor
5    525 W. Ottawa Street, Suite 60             Nashville, TN 37243-0485
     Lansing, MI 48913
6
                                                Mark L. Earley
7    Vincent A. Consul                          Attorney General of Virginia
     Dickerson, Dickerson, Consul & Pocker      Gregory C. Fleming
8    777 N. Rainbow Boulevard, Suite 350        Assistant Attorney General
     Las Vegas, NV 89107                        900 East Main Street
9                                               Richmond, VA 23219

10   Eugene J. Kottenstette, Esq.               Virginia Lowe, Esq.
     Assistant City Attorney                    Department of Justice
11   Counsel for City and County of Denver      555 4th Street, N.W., Room 7921
     201 W. Colfax Avenue, Dept. 1207           Washington, D.C. 20001
12   Denver, CO 80202-5332

13   Internal Revenue Service
     P.O. Box 9941 Stop 5400
14   Ogden, UT 84409

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:17217201.1